IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **CLYDE JOE PARKER** § | |
| **TDCJ-CID #1154103** § | |
| § | |
| **VS.** § | **C.A. NO. C-06-434** |
| § | |
| **KELLI WARD, ET AL.** § | |

### MEMORANDUM AND RECOMMENDATION
### TO DISMISS CLAIMS AND TO RETAIN ACTION

This case is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's Eighth Amendment claims of failure to protect and deliberate indifference to serious medical needs

be retained as set forth herein. It is respectfully recommended further that plaintiff's remaining claims be dismissed without prejudice upon plaintiff's own motion.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Lewis Unit in Woodville, Texas, although his complaint concerns events that occurred while he was at the McConnell Unit in Beeville, Texas. He filed his original complaint on October 2, 2006, alleging that certain McConnell Unit officers and official violated his Eighth Amendment right to be free from cruel and unusual punishment by denying or delaying medical treatment prescribed by a prison doctor and by failing to protect him from inmate attacks. (D.E. 1). He also claimed that certain officials retaliated against him for filing grievances. Id.

A Spears[1] hearing was conducted on January 25, 2007. Following a discussion of his claims, plaintiff was ordered to submit a supplemental complaint setting forth in chronological order his allegations against the 25-plus defendants.[2]

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] The named individual defendants were (1) Kelli Ward; (2) Donna Vallie; (3) Martha Wear; (4) Guy Smith; (5) Warden Crites; (6) Warden Jackson; (7) Officer Gutierrez; (8) Officer Rengel; (9) Officer Ogden; (10) Officer Diaz; (11) Officer Quiroz; (12) Officer Anahusa; (13)

On March 19, 2007, plaintiff filed a supplemental complaint. (D.E. 21). In his supplemental complaint, plaintiff moved to voluntarily dismiss 26 of the 52 counts in his original complaint. (See D.E.21, at ¶¶ 3, 5, 10-18, 20-22, 33-40, 50-53). Following an extension of time (D.E. 22, 23), on April 25, 2007, plaintiff filed a second supplemental complaint. (D.E. 25). At the conclusion of his second supplemental complaint, plaintiff writes:

> [Concerning] any count not added to this [second] amended complaint, plaintiff voluntary ask [sic] this Court to dismiss for failure to prosecute, without prejudice.

(See D.E. 25 at 8).

Based on plaintiff's desire to amend his complaint to abandon all claims not specifically set forth in the second supplemental complaint,[3] the following allegations are taken from plaintiff's second amended complaint (D.E. 25), and any testimony relevant to those claims from the January 25, 2007evidentiary hearing.

Plaintiff is now suing the following defendants: (1) Warden Norris Jackson; (2) Officer Gutierrez; (3) Officer Rengel; (4) Officer William R. Ogden; (5) Officer Diaz; (6) Officer Richard Quiroz; (7) Officer Anahosa; (8) Mr. Westloft; (9) Ms. Castro; and

---

Major Gordy; (14) Ms. Cowen; (15) Officer Belture; (16) Mr. Westloft; (17) Ms. Castro; (18) Sergeant Strolnee; (19) Officer Dreton; (20) Officer Puente; (21) Officer A. Gonzales; (22) Captain Nelson; (23) Officer Martinez; (24) Dr. Smith; and (25) Nurse Cherry. Plaintiff also sued "unidentified members of the State Unit Classification Committee."

[3] See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (noting that an amended complaint supercedes original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading).

unidentified members of the State Unit Classification Committee ("UCC"), in Huntsville, Texas.

Plaintiff suffers from high blood pressure that must be continually monitored. To that end, prison physicians have prescribed him a medical lay-in pass, instructing prison security to escort him to the infirmary several times a week so that his blood pressure may be taken and his medications reviewed or modified as necessary. On September 14, 2005, plaintiff presented his medical lay-in pass to Officer Gutierrez. Officer Gutierrez took plaintiff's pass, told him that he was going to talk to a supervisor about it, and left. When plaintiff saw Officer Gutierrez later that day, Officer Gutierrez told him that the offenders were not going to run the guards around. Plaintiff was not taken to the infirmary that day. Plaintiff claims that, for the next three months, Officer Gutierrez continued to ignore his medical pass. When plaintiff was finally transferred to the Lewis Unit, his high blood pressure was exacerbated. Plaintiff claims that Officer Gutierrez denied and delayed him medical care in deliberate indifference to his serious medical needs.

Plaintiff claims that, on September 14 and 23, 2005, Officer Rengel denied and delayed him medical care by refusing to take him to the infirmary for his blood pressure checks, in deliberate indifference to his serious medical needs. He claims that Officer Rengel's deliberate indifference exacerbated his high blood pressure.

Plaintiff claims that, on October 13, 2005, Officer Quiroz refused to take him for his medical appointments. Plaintiff told Officer Quiroz that he was at possible risk for heart attack, stroke, or heart disease, and that he had been recently waking up with one side of his

body numb.  However, Officer Quiroz refused to honor his lay-in pass, in deliberate indifference to his serious medical needs.

On September 14 and 23, and October 18, 2005, Officer Diaz, Officer Ogden, and Officer Anahosa, refused to take plaintiff for his medical appointments.  When plaintiff advised Officer Diaz of his scheduled medical appointments, Officer Diaz just laughed and said "Yeah, right."  Officer Ogden told plaintiff that, if no other officer was going to honor his lay-in pass, then he would not either.   Officer Anahosa stated "You ain't got it through your head yet you ain't going to medical?"  Defendants' conduct exacerbated plaintiff's high blood pressure, causing him to experience numbness on both sides, dizzy spells, chest pains, and slight weakness in his left hand.

In November 2005, plaintiff received threats of physical violence from Blood and Crip gang members.  He was removed from general population and requested safe-keeping status. In December, he was returned to general population, and in January 2006, he was attacked by an inmate on the recreation yard.  Following the January 2006, attack, plaintiff was removed from general population.  On February 9, 2006, a McConnell Unit classification committee recommended that plaintiff's request for safe-keeping status be granted. However, the State UCC in Huntsville did not adopt the recommendation.  Thereafter, on February 22, 2006, a classification hearing was held before  Warden Jackson, Mr. Westloft, and Ms. Castro.  At the hearing, plaintiff told defendants that he was at risk for physical violence from gang members and he reminded them of the January assault.  Plaintiff also reported that Officer Anahosa had stated " I have something for the first offender who takes

5

care of [plaintiff]," as he walked past plaintiff's cell, further placing his safety at risk. Despite plaintiff's assertions, Warden Jackson told plaintiff that the State UCC had denied his request for safe-keeping, and he voted that plaintiff be returned to his cell in 8 Building. Mr. Westloft did not consider the evidence, and stated "I vote whatever you say Warden Jackson." Mrs. Castro also "followed" Warden Jackson and voted that plaintiff be returned to 8 Building.

On March 3, 2006, plaintiff was returned to 8 Building, and on March 6, 2006, he was assaulted by his cell-mate who placed a lock in a sock, and beat him about the face. Plaintiff required six stitches above his eyebrow as a result of the attack.

Plaintiff claims that Warden Jackson, Mr. Westloft, and Ms. Castro were aware that he was in danger on 8 Building from gang attacks and officer retaliation, but refused to place him in safe-keeping, in deliberate indifference to his health and safety. Plaintiff also claims that the unknown members of the State-UCC were deliberately indifferent to his health and safety because they declined to adopt the earlier McConnell UCC's recommendation that he placed in safe-keeping.

Plaintiff is seeking $1,000,000 in compensatory damages from each defendant, and $100,000 in punitive damages.

### III. DISCUSSION

**A.  Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42

U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  Id.

**B.     Plaintiff's motion for voluntary dismissal.**

In his original complaint, plaintiff named twenty-five individual defendants as well as the unknown members of the State UCC.  In his supplemental complaint (D.E. 21), plaintiff moved to dismiss certain "counts" from his original complaint.  The dismissal of those counts effectively eliminates the following five (5) defendants altogether from this suit: Donna Vallie;  Officer Belture; Officer Dreton; Officer Puente; Nurse Wilma L. Cherry.  The supplemental complaint also reduced in number many of the "counts" against the remaining defendants.

Thereafter, plaintiff filed his second supplemental complaint.  (D.E. 25).  In his second supplement, plaintiff no longer pursues claims against the following eleven (11) defendants: Kelli Ward; Martha Wear; Guy Smith; Warden Crites; Major Gordy; Ms. Cowen; Sergeant Strolnee; Officer A. Gonzales; Captain Nelson; Officer Martinez; and Dr. Smith.

Pursuant to the representations made in plaintiff's first and second supplemental complaints, plaintiff no longer desires to pursue claims against the sixteen defendants named above, and he moves for dismissal of those defendants from this lawsuit.

None of the sixteen defendants named above has been served with process in this case, nor has any defendant appeared. It is respectfully recommended that, to the extent plaintiff's first and second supplemental complaints seek to abandon claims and/or dismiss certain claims and defendants from this lawsuit, that the Court grant plaintiff's motion and dismiss those claims and defendants without prejudice. See Fed. R. Civ. P. 41(a) (authorizing dismissal upon plaintiff's motion prior to service on defendant).

**C.     Claims against defendants in their official capacities.**

Plaintiff did not indicate whether he was suing the remaining defendants in their official or individual capacities. However, to the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment precludes awards of money damages against state actors sued in their official capacities). Thus, it is respectfully recommended that plaintiff's claims against the remaining defendants sued in their official capacities be dismissed with prejudice.

**D.     Deliberate indifference to serious medical needs.**

Plaintiff claims that Officer Gutierrez, Officer Rengel, Officer Quiroz, Officer Diaz, Officer Ogden, and Officer Anahosa were deliberately indifferent to his serious medical

needs when they repeatedly refused to honor his medical lay-in passes or to escort him to the infirmary to have his blood pressure monitored.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303.(1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. Farmer, 511 U.S. 825, 837 (1994). Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff's claims that defendants denied, delayed or interfered with his prescribed medical treatment. He states that, on each occasion, he told the defendants that he was suffering from symptoms of high blood pressure, including dizziness and numbness, and was under doctors' orders to report to the infirmary, but that defendants failed to take his complaints seriously and refused to take him to the infirmary. He claims that, as a result of defendants' repeated failure to escort him for blood pressure checks, his blood pressure was not well maintained and has caused him lasting injury, making him more susceptible to risk of stroke and other diseases.

Plaintiff's allegations of deliberate indifference against defendants are sufficient to survive § 1915A screening. Plaintiff has alleged that he suffered from a serious medical condition, high blood pressure, and was under doctors' orders to have his blood pressure monitored, but defendants, who were aware of his serious medical need, refused to take him to the infirmary, despite plaintiff's lay-in pass authorizing the escort, and despite plaintiff's reporting of adverse symptoms, and his allegation of lasting injury. It is respectfully recommended that the Court retain plaintiff's deliberate indifference to serious medical needs claims against Officer Gutierrez, Officer Rengel, Officer Quiroz, Officer Diaz, Officer Ogden, and Officer Anahosa.

### E.     Failure to protect.

Plaintiff argues that the unidentified members of the State UCC were deliberately indifferent to his health and safety because they rejected the recommendation of a McConnell Unit UCC that he be placed in safe-keeping. He claims that Warden Jackson, Mr. Westloft

and Ms. Castro were also deliberately indifferent to his health and safety in denying his request for safe-keeping status. He alleges that they were personally aware of the fact that he was under threats of physical violence from gang members, and that he had been assaulted in the past. He claims these defendants denied his request for protective custody simply because the State UCC denied it.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

In addition, to state a cause of action under § 1983, plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). A supervisory official may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981). A supervisory defendant must be either personally involved in the incidents underlying the claim "or there must be a causal connection between an act of the [supervisor] and the constitutional violation sought

to be redressed." Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted); also see Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986) (usually a failure to supervise imposes § 1983 liability only where there is a history of widespread deprivations).

Plaintiff's allegations against the unidentified State UCC members, Warden Jackson, Mr. Westloft and Ms. Castro are sufficient to state a claim for failure to protect. Plaintiff relates that he had been receiving threats from the Crips and the Bloods since November 2005. He was assaulted in January of 2006 on the recreation yard. A McConnell Unit panel recommended that he be placed in safe-keeping.

As to the State UCC members, plaintiff establishes that defendants knew he was at an increased risk of physical harm based on the fact that the McConnell Unit UCC recommended he be placed in safekeeping. Despite this knowledge, the State UCC members failed to take appropriate measures to reduce plaintiff's risk of harm at being in general population. As to Warden Jackson, Mr. Westloft, and Ms. Castro, plaintiff appeared before these defendants at the classification hearing on February 22, 2006, and told them about the threats, the past assaults, and testified that Officer Anahusa had placed him in further danger. However, Warden Jackson dismissed his testimony, indicated that he did not "have time" for plaintiff's case, and allegedly denied his safe-keeping request because the State UCC had denied it. Plaintiff claims that Mr. Westloft and Ms. Castro simply followed Warden Jackson's lead to deny his safe-keeping request. Plaintiff was transferred back to general population on March 3, 2006, and three days later, he was assaulted in his cell. Plaintiff has alleged facts which indicate that these defendants knew that he faced a substantial risk of

serious harm and disregarded that risk. It is recommended that the Court retain plaintiff's failure to protect claims against the unidentified State UCC members, Warden Jackson, Mr. Westloft and Ms. Castro.

## IV. **RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that the Court retain plaintiff's Eighth Amendment claims against the following defendants in their individual capacities: Officer Gutierrez; Officer Rengel; Officer Ogden; Officer Diaz; Officer Quiroz; Officer Anahosa; Warden Jackson; Mr. Westloft; and Ms. Castro, and unidentified members of the State UCC. It is recommended that, to the extent plaintiff is suing any of these defendants in their official capacities, those claims be dismissed as barred by the Eleventh Amendment.

It is respectfully recommended further that plaintiff's remaining claims against all other defendants be dismissed without prejudice upon plaintiff's representation that he has abandoned those claims and does not desire to proceed with them at this time.

Respectfully submitted this 13th day of July, 2007.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).